1   Raj V. Abhyanker, California SBN 233284
2   raj@legalforcelaw.com

3   LEGALFORCE RAPC WORLDWIDE, P.C.
    1580 W. El Camino Real, Suite 10
4   Mountain View, CA 94040
    Telephone:    (650) 965-8731
5   Facsimile:    (650) 989-2131

6
    Attorney for Plaintiff,
7   LegalForce RAPC Worldwide P.C.

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                    SAN FRANCISCO DIVISION
11

12

13   LEGALFORCE RAPC WORLDWIDE,        Case No. : 3:22-cv-07627-TNT
     P.C.
14                                     **SECOND AMENDED COMPLAINT FOR:**
              Plaintiff,
15                                     1.  TRADEMARK INFRINGEMENT, 15
16        v.                               U.S.C. § 1114;
                                       2.  TRADEMARK INFRINGEMENT, 15
17   LEGALON TECHNOLOGIES, INC., a         U.S.C. § 1125(a); and
     Delaware corporation;             3.  TRADEMARK INFRINGEMENT,
18                                         CALIFORNIA COMMON LAW;  and
              Defendant.               4.  CALIFORNIA UNFAIR COMPETITION.
19
20                                     **JURY TRIAL DEMANDED**
21

22

23

24

25

26

27

28

Plaintiff LegalForce RAPC Worldwide P.C. ("LegalForce", "Plaintiff"), a California Professional "S" corporation, by and through its counsel, for its Complaint against Defendant LegalOn Technologies, Inc., ("Defendant" or "LegalOn"), makes the following allegations on information and belief, unless based on personal knowledge or otherwise stated:

## NATURE OF ACTION

1.  This action is a trademark infringement action and unfair competition action.

## PARTIES

2.  Plaintiff is a California S corporation having a principal place of business at 1580 W. El Camino Real, Suite 10, Mountain View, CA 94040, which currently operates and has operated both the www.legalforcelaw.com website and the www.legalforce.com websites for over a decade.

3.  Defendant is a Delaware corporation formed September 19, 2022.  Defendant is a wholly owned subsidiary of LegalOn Technologies, Inc. of Japan, which was formerly named LegalForce, Inc. until December 1, 2022 ("Parent Company"). While Defendant is ostensibly a subsidiary of the Parent Company, in truth the companies are a single entity.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 because this action arises under the laws of the United States, and because it involves allegations regarding trademark violations.

5.  This Court has general and specific jurisdiction over LegalOn because it is physically present in California and in the United States.  This Court has general personal jurisdiction over LegalOn's because it has employees and customers in this district and is headquartered in San Francisco.  LegalOn has intentionally and purposefully directed tortious acts expressly aimed at

California and the United States, with foreseeable harm to LegalForce, and LegalForce's claims arise out of the LegalOn's forum-related activities. Exercising jurisdiction over LegalOn is both reasonable and fair given the facts alleged in this complaint.

6. This Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367 because it arises from the same nucleus of operative facts as the federal claims.

7. This Court has general personal jurisdiction over LegalOn because LegalOn has business users of its product who have offices in California and in this District, in particular. Defendant's Chief Executive Officer Daniel Lewis stated that more than 60 companies use the LegalOn U.S. product across several dozen companies and law firms.  In a Press Release by the Defendant published on BusinessWire dated April 24, 2023, Defendant admitted that its customers in the United States include  Turo, OnNeck IT Solutions, ScribeAmerica, and Hans Kim.   At least two of these customers are in this district.

8. Turo admits through its Senior Contract Manager, Alenda Martin, that the company uses Defendant's products consistently and that the AI picks up critical issues. A public search reveals that Turo is headquartered in San Francisco California at 111 Sutter St, San Francisco, CA 94104, and does not appear to have any presence in Japan.

9. Hans Kim admits that Defendant's review technology is an implementation that he has seen, and, based on his California state bar profile, Hans Kim is a California licensed attorney in Palo Alto, California at 25 Alannah Ct, Palo Alto, CA 94303-3009.

10. Plaintiff has standing to bring this action because it is a competitor to Defendant in so far as it is a legal technology enabled law firm, which has utilized artificial intelligence software to improve business processes for itself and its customers, and targets the same kinds of law firm and business customers as the Defendant.

11.     For at least these reasons, the Defendant has personal jurisdiction and standing in the United States, and more specifically in this county because it has admitted to having customers in the United States and specifically in this district.

**FACTUAL ALLEGATIONS**

I.    **Introduction**

12. Plaintiff is an international law firm that operates a number of legal technology platforms (e.g., Trademarkia, PatentExpress, IncDecentral, Piggiebank, LegalForce, Copyrightable, Atherton, Enforceable, Hiago, Nearcast, LegalForceLaw, etc).   Some of Plaintiff's legal technology platforms offer proprietary artificial intelligence based software products and services for its customers worldwide.   Plaintiff has been recognized by the American Bar Association, among others, for its use of technology in improving legal processes.   Plaintiff uses its legal technology platforms to fuel its international law firm, which provides legal advice on a wide range of corporate and intellectual property issues globally. Plaintiff, along with its subsidiaries, employs approximately 200 people worldwide, of which approximately 100 are full-time, licensed lawyers in their respective jurisdictions (in the United States, South Africa, Poland, India, Mexico, Argentina, Guyana, and China). Plaintiff's staff includes approximately 12 full-time lawyers licensed in the United States and approximately 30 full-time, full stack software engineers globally.

13. Plaintiff invested significantly in the use of artificial intelligence to build new services and products for its customers for over five years.   Specifically, at least 5 of its engineers focus primarily on projects involving artificial intelligence services.

14. Plaintiff has been using the LegalForce mark as part of its global business operations for more than a decade.   The domain LegalForce was purchased by the Plaintiff's founders from

SalesForce in 2006, when SalesForce decided to expressly abandon pursuit of the legal tech sector and abandoned its original LegalForce trademark application (Serial #78652464) after agreeing to transaction terms with the Plaintiff.

**A. Plaintiff invested significantly in Artificial Intelligence powered legal software**

15. Between 2016 and 2022, the Plaintiff invested over $600,000 in developing its Artificial Intelligence powered LegalForce Piggiebank product, and even demonstrated the product at TechCrunch Disrupt demo pit, the AI Summit, and the O'Reilly AI conference. An artificial intelligence video demonstration of Plaintiff's LegalForce Piggiebank is time-stamped as of September 4, 2017 (one year before Parent Company began operations) and visible on the Piggiebank Facebook page. The video shows the LegalForce Piggiebank artificial intelligence product being demonstrated with a LF logo on the upper left. Plaintiff's LegalForce Piggiebank product helped companies review contracts, attachments and emails for business intelligence using artificial intelligence, and caught the interest of potential customers including Disney and Volvo. It also won an award for one of the best AI product innovations at the O'Reilly AI event in 2017.

16. Plaintiff also significantly invested in artificial intelligence products related to its Trademarkia website, and launched Trademarkia.ai earlier this year. Plaintiff has sought venture capital investment for its business and approached leading Silicon Valley investors until in 2022 but was ultimately unsuccessful. Now that interest rates have risen, venture capital has dried up for Plaintiff's business in 2023, valuations have significantly decreased, and this has resulted in a loss of profits from equity gains by the Plaintiff at least partly because of the Parent Company's infringement of the LegalForce marks and interference with prospective economic relations.

**B. Plaintiff was Seeking Venture Capital at the Same Time, in 2021 and 2022, from the Same Set of Investors as Defendant and Parent Company**

17. While the Parent Company was seeking venture capital in 2022 in funding for the venture that would become Defendant, so too was Plaintiff. Indeed, Plaintiff had invested significant resources in full-time staff led by a David Metzler, who was hired for the specific purpose of raising venture capital funds for the Plaintiff in 2021 until 2022.

18. Metzler is a former venture capitalist turned business operator, who was hired as Entrepreneur in Residence in the Plaintiff's business full time for the specific purpose of raising venture capital. Metzler brought in a whole team to Plaintiff's business of experienced executives in an effort to recapitalize and raise venture capital for Plaintiff's business including experienced venture capital, private equity, marketing, and legal operators Jared Coleman, John Zdanowski, Ethan Lu, and Sumeet Harish. Plaintiff invested over $600,000 in preparing the Plaintiff's company for venture capital fundraising between 2021 and 2022. It should be noted that Coleman and Metzler were also exploring reincorporating Plaintiff's business in Arizona, Utah, or the United Kingdom to raise venture capital, since those jurisdictions now allow non-lawyer ownership of law firms, including tech-enabled law firms like Plaintiff. In recent years, venture-backed legal technology companies such as LegalZoom and Rocket Lawyer have incorporated in these jurisdictions while operating a law firm.

19. Defendant, as a sister company to Parent Company, has intentionally interfered with Plaintiff's prospective economic advantage with potential investors in Silicon Valley, as Plaintiff was seeking venture capital from similar funds. For example, Plaintiff was actively seeking venture investment in 2022 from leading investors including Sequoia Capital. Plaintiff was first invited to meet with a Sequoia Capital partner and investment director in the legal sector in

2010, and has had discussions and meetings with Sequoia Capital regarding funding of its business across the years.   Yet, Sequoia Capital did not invest in Plaintiff's business in 2022 but rather invested in Defendant's business indirectly through its investment in Parent Company.

20. Had Defendant and Parent Company not been using the identical trademark, Plaintiff would have likely received at least some venture capital investments that otherwise went to Parent Company and Defendant.  But for Parent Company's interference and infringement of Plaintiff's trademark and goodwill, at least a percentage of Defendant's equity would not be as valuable in 2022, and at least some of these equity gains/profits would have gone to Plaintiff.

**C. Parent Company of Defendant's infringing use**

21. Until changing its name in December 2022, the Parent Company also used the name LegalForce. Up until 2020, this conduct took place predominantly in Japan.  Plaintiff had formally opposed the Parent Company's right in Japan in 2018, but was unsuccessful, primarily because Japan is a first to file trademark system (not primarily based on use in commerce). Despite knowing of Plaintiff's superior rights in the United States through the Opposition in Japan two years earlier, in 2020, the Parent Company began using the LEGALFORCE mark in the United States, when it started marketing its products here.  It was only after being sued for this conduct by Plaintiff that the Parent Company created a U.S. subsidiary: Defendant. But not only has this parent-subsidiary relationship proven to be an attempt to cover up the fact that the companies are in fact a single entity, even this new entity, the Defendant here, has likely used the LegalForce mark in the United States.

22. After its incorporation in September of 2022, Defendant used the LEGALFORCE name until announcing the new name in mid November 2022.  Upon information and belief, employment agreements for Daniel Lewis and other employees of the Defendant hired prior to

November 2022 were sent out using the name "LegalForce."  But even after Defendant ceased to publicly use the LEGALFORCE mark, Defendant's use of the LEGALON trademark continues to infringe on Plaintiff's rights in the LEGALFORCE mark because of the commercial impression it forms in view of Defendant's corporate history and because of the similarity of the LEGALFORCE and LEGALON marks.  Specifically, Defendant borrows from its Parent Company's founding story on its website; it claims the Parent Company's ownership, history, and funding as its own.   Its Parent Company was previously known as LegalForce. And because the mark LEGALON bears a significant resemblance to the LEGALFORCE mark legitimately registered by Plaintiff, this use creates confusion that has harmed and continues to harm Plaintiff.

**II. Defendant LegalOn and Parent Company Are, in Fact, a Single Enterprise**

23.   While ostensibly a subsidiary of Parent Company, Defendant is, in reality, a sister company and an *alter ego* of Parent Company. The following characteristics demonstrate that Defendant is not, in fact, a distinct corporate entity than its foreign Parent Company.

24. First, the subsidiary is wholly owned by the parent company. There are no other interests or shareholders of Defendant that could dilute the influence of Parent Company in the exercise of Defendant's activities.

25. Defendant is also entirely legally dependent on the Parent Company. Mr. Lewis testified in his deposition that the U.S. entity has no independent directors (nor has it even considered one), but only a three member board of directors, of which he is the chairman, with the other two directors being Nozuma Tsunoda and JP Biard of the Parent Company.   Lewis testified that the voting rights are equal for Directors, meaning that the Japanese directors effectively fully control the U.S. entity's officers.   Therefore, the U.S. entity is nothing more than an alter ego of

the Japanese entity.  Defendant's board of directors is controlled by the Parent Company, which holds a controlling interest in Defendant's shares or voting rights. Mr. Lewis further testified that each employee of the U.S. entity is a shareholder or option holder of Parent Company, but have no stock or options to purchase stock in their own employer, Defendant.

26. The Parent Company also exercises effective control over Defendant's operations, including strategic planning, management decisions, and financial matters. Therefore, the Defendant must operate under the Parent Company's policies and guidelines.

27. Defendant is financially dependent on the Parent Company, which provides financial support to the sister company. In this regard, Defendant is fully dependent on the Parent Company for survival. In his deposition, Mr. Lewis testified that the Japanese entity fully funds the U.S. entity and transfers money to it whenever it is needed to support operations.

28. Defendant and the Parent Company rely on common, shared resources, such as technology, intellectual property, research and development, distribution networks, or supply chains. Defendant's sole products are variants of Parent Company's LegalForce branded products.  Defendant's sole products are English versions of the LegalForce and LegalForce Cabinet products sold since July 1, 2020 by Parent Company to global customers for use with American contracts, which Defendant descriptively calls AI Revise.[1]  AI Revise is not used as a source identifier on the Defendant's website as a trademark, but rather a descriptive term of what the software does:

---

[1] See Linkedin Post as of July 13, 2022 by Parent Company titled "Lawyer" with the description "Since July 1, 2020, our product "LegalForce" hs released the first official version of English review function in Japan."    Nozuma Tsunoda admitted that "English" refers to "American" contracts, and not contracts of the United Kingdom or elsewhere.    Tsunoda and Biard also admitted that the product names continue to be called LegalForce and LegalForce Cabinet after December 1, 2022.



Screenshot taken July 13, 2023.

29.  In a trademark filing with the USPTO filed on June 15, 2023, Parent Company admits that it is not using the AI Revise trademark in the United States because it filed this application as a 1B intent to use trademark application as Serial # 98045309.    Parent Company has filed trademarks for LF (legalforce design), LEGALON and AI REVISE in the United States, while Defendant has ostensibly licensed these putative marks from the Parent Company.

30. All of Defendant LegalOn's products are made by Parent Company, and LegalOn employed no engineers with skills to create its artificial intelligence software, much less any engineers at all as of January 2023.[2]  All of the engineers developing the LegalOn products were employees of Parent Company.[3]  Further, LegalOn claims that it has 3,000 global customers (as advertised on its US website).  But these are actually Parent Company's customers, and, because these customers use products with the LGEALFORCE mark.   To the extent that these customers are LegalOn customers as well, LegalOn is using and infringing on the LEGALFORCE trademark in the United States and globally.   The Parent Company also

---

[2]  Admitted by JP Biard, during Deposition of JP Biard, January 25, 2023 in the U.S. Embassy in Tokyo, under Hague Convention and authorized by the Ministry of Justice of Japan.
[3]  *Id.*

provides managerial expertise and access to global markets, as well as sharing customers. Mr. Lewis testified in his deposition that the Parent Company provides assistance to Defendant in prospecting U.S. customers to speak with. Defendant LegalOn's website www.legalontech.com claims Parent Company's customers for its own, by claiming it has over 3000 global customers. [4]

31. Defendant and the Parent Company's digital presence also reflects that the companies are not, in fact, separate from one another. LegalOn's website www.legalontech.com incorporates the founding story of Parent Company, and even claims it raised $130 million in venture funding that LegalOn did not raise but was in fact raised by Parent Company. [5] The inclusion of this funding further demonstrates that Defendant and Parent Company are not independent and in fact share one purse. This entire funding of $130 million was raised for the specific purpose of expansion into the United States, a fact that Parent Company has admitted.[6] LegalOn's website www.legalontech.com claims this $130 million in funding by writing on its website that the "company is backed by leading investors and has raised over $130M."[7] Parent Company's CEO has admitted that it has raised not a single dollar of venture funding after the name change to LegalOn (including LegalOn the defendant here), and all of its $130 million funding was raised while the name of Parent Company was called LegalForce.[8] In sum, Parent

---

[4] Admitted by Daniel Lewis, CEO of LegalOn, in Ex. 3 to Lewis Decl., as Dkt 20-4 in this case - "LegalOn is the leader in AI contract review software for legal teams." "Innovative lawyers and legal professionals at over 3,000 leading companies and firms globally use LegalOn to review and negotiate contracts faster and more accurately."

[5] Admitted by Daniel Lewis, CEO of LegalOn, in Ex. 3 to Lewis Decl., as Dkt 20-4 in this case - "company is backed by leading investors and has raised over $130M"

[6] "The Defendant filed this lawsuit in the U.S. on June 24, 2022, the day after the Plaintiff issued a press release regarding **financing for expansion into the U.S.**" Japanese Complaint, LegalOn v. LegalForce RAPC Worldwide filed in Japan on January 20, 2023 page 19, first para.

[7] *Id.*

[8] Admitted during the Deposition of Nozumu Tsunoda, January 26, 2023 in the U.S. Embassy in Tokyo authorized under the Hague Convention and the Ministry of Justice of Japan.

Company raised $130 million dollars for the express purpose of expanding its operations into the United States, and this money has been claimed and used by Defendant.

32. Defendant and Parent Company also frequently share the same brand name, trademarks, and/or trade names. This helps create a unified image and strengthens the association between the two entities. If the statements on Defendant's website are to be believed, each of the 3,000 global customers mentioned above are using the American products of Parent Company that infringe on Plaintiff's rights in the LEGALFORCE Marks.[9]  Therefore, for the entirety of Defendant LegalOn's corporate existence, since its formation on or about September 19, 2022, LegalOn has been actively infringing on the LEGALFORCE marks because it has admitted to having 3000 global customers who use either the LegalForce or LegalForce Cabinet products of Parent Company.[10]  Additionally, Defendant LegalOn does not even own the LEGALON trademark, which is, in fact, owned by Parent Company.[11]  The filing date of the LEGALON trademarks predates the formation of LegalOn technologies on or about September 19, 2022 by three weeks.[12]  In addition, Defendant has substantial users of its U.S. product.  Mr. Lewis testified that more than 60 companies use the LegalOn U.S. product across several dozen

---

[9] Parent Company admits that it continues to market its Japanese products as "LegalForce" and "LegalForce Cabinet" as of January 26, 2023.

[10] Admitted by Daniel Lewis, CEO of LegalOn, in Ex. 3 to Lewis Decl., as Dkt 20-4 in this case - "LegalOn is the leader in AI contract review software for legal teams." "Innovative lawyers and legal professionals at over 3,000 leading companies and firms globally use LegalOn to review and negotiate contracts faster and more accurately."

[11] See TSDR Record, LEGAL ON trademark U.S. Serial 97564038 filed August 25, 2022 owned by, owned by LegalOn Technologies, Inc., 6th floor, Toyosu Front, 3-2-20, Toyosu, Koto-ku Tokyo 135-0061 Japan;
https://tsdr.uspto.gov/#caseNumber=97564038&caseType=SERIAL_NO&searchType=statusSearch and TSDR Record, LEGAL ON TECHNOLOGIES trademark U.S. Serial 97560797 filed August 23, 2022 owned by, owned by LegalOn Technologies, Inc., 6th floor, Toyosu Front, 3-2-20, Toyosu, Koto-ku Tokyo 135-0061 Japan;
https://tsdr.uspto.gov/#caseNumber=97560797&caseType=SERIAL_NO&searchType=statusSearch , both predating the formation of LegalOn by about three weeks.

[12] *Id.*

companies and law firms.  Mr. Lewis also testified that employees of the Parent Company assist in prospecting customers for the U.S. entity.

33. Moreover, Defendant LegalOn is a sister entity of Parent Company because it does not and has never operated independently on a practical level.  Four of the five first employees of LegalOn were hired by Parent Company, and the only exception is the biological son of one of the LegalOn employees.[13]  The CEO of LegalOn Daniel Lewis reports to and is supervised by an executive JP Biard at Parent Company.[14]   LegalOn employees are summoned to Japan to work at the offices of Parent Company including four of the five employees working for the entire week of January 23, 2023 "as part of the onboarding process for our new employees" and for the "strategy of the U.S. operation."[15]  If LegalOn were an independent entity, its employees would not be summoned for an onboarding process in Japan by Parent Company, or be working with their boss, the Head of Global Strategy, JP Biard at Parent Company in Tokyo on strategy for its U.S. operation.

34. Defendant also relies on Parent Company's employees to perform essential day-to-day activities, without which Defendant could not function.  LegalOn does not own, control, or have any responsibility regarding the operation of its website www.legalontech.com. This website is managed, administered, and was built by Parent Company information technology professional Natsuko Sato, a full time employee at Parent Company in Tokyo.[16]  Sato also administers the

---

[13]  Spencer Drobot was hired as a salesperson of LegalOn in Austin Texas, as a two for one package with his father, Paul Drobot.  Paul was recruited by Parent Company in late August / early September 2022 prior to the formation of LegalOn as a corporate entity in the United States.   As part of his employment, Paul said that Spencer should also be hired, and both Paul and Spencer joined LegalOn in January 2023.

[14]  *Id.*

[15]  *Id.*

[16]  Admitted during Deposition of JP Biard, January 25, 2023 in the U.S. Embassy in Tokyo, under Hague Convention with authorization by the Ministry of Japan.

https://en.legalforce-corp.com and https://legalforce-cloud.com websites.[17]  Even LegalOn's email accounts and Google Drive accounts are provisioned by Natsuko Sato, a full time employee at Parent Company in Tokyo.[18]  Therefore, LegalOn has no controls over or privacy over its email accounts or corporate shared storage space, and rather that is controlled by Parent Company.

35. Further, LegalOn's offices in the United States are not their own.[19]  Rather, the contract is between Parent Company and WeWork, and LegalOn employees are merely occupiers of that shared access space.[20]

36.    For all of the reasons set forth herein, there is a unity of interest and ownership between Parent Company and LegalOn because both operate as one, with the top executive Daniel Lewis of LegalOn reporting to JP Biard of Parent Company, and lacking any independent discretion.  Given that the corporate websites, names and logos are same; the IT staff that administers the website www.legalontech.com is a full time employee of Parent Company; four out of five first employees of Defendant's employees were directly hired by Parent Company; the office space in the United States occupied by Defendant LegalOn is leased by Parent Company in Japan; and the engineers that build the products of LegalOn are employees of Parent Company, and all the other facts described herein,  Defendant LegalOn and Parent Company do not have separate personalities of the corporation and the individual distinction no longer exists.

---

[17]  *Id.*

[18]  *Id.*

[19]  Admitted during Deposition of JP Biard, January 25, 2023 in the U.S. Embassy in Tokyo authorized under the Hague Convention and the Ministry of Justice of Japan.

[20]  *Id.*

37. Here, LegalOn also commingles its office space, website, engineering team, IT department, its trademark in LEGALON (which is owned by Parent Company), and its sole funding source with Parent Company.[21]   Moreover, through its office space and lease, LegalOn holds out that Parent Company is liable for the debts of LegalOn and given it is a wholly owned subsidiary, identical equitable ownership of the entity exists.   LegalOn also uses the same offices and employees of Parent Company, and Parent Company is merely using LegalOn a mere shell and conduit for the affairs of Parent Company because four out of five employees of LegalOn were hired by Parent Company, and the entire management structure of LegalOn reports to an executive JP Biard at Parent Company.[22]   LegalOn has no capitalization besides Parent Company, all of its funding comes from Parent Company.[23]   By having the LegalOn CEO Lewis report to Parent Company's "Head of Global Strategy" JP Biard, LegalOn disregards corporate formalities, and through is commingling office space both in San Francisco and Japan, lacks segregation of corporate records, and has senior management.[24] Therefore, Defendant LegalOn in the United States is not a distinct corporate entity from its Parent Company in Japan, and the companies are in fact sister companies and alter egos of one another.

38. Moreover, Defendant has attempted to use the legal fiction of the parent/subsidiary relationship to shield itself from liability by asserting generally that neither company is liable for the actions of the other and by asserting in this suit that Defendant was not in existence at the time of the offending conduct while asserting in the lawsuit Plaintiff filed against Parent Company that the Court does not have jurisdiction over Parent Company. Using the corporate

---

[21]  *Id.*

[22]  *Id.*

[23]  Admitted during the Deposition of Nozumu Tsunoda, January 26, 2023 in the U.S. Embassy in Tokyo authorized under the Hague Convention and the Ministry of Justice of Japan.

[24]  *Id.*

SECOND AMENDED COMPLAINT
CASE NO.: 3:22-cv-07627-TLT

form to separate the entities in this strategic manner would allow Defendant and Parent Company, who are in fact a single entity, to frustrate Plaintiff's attempts to recover damages and obtain relief for the conduct alleged herein, which was performed by the Defendant and Parent Company acting together as a single enterprise.

39. Further, if the acts of LegalOn are treated as those of the corporation alone, an inequitable result will follow in that LegalForce's rights will be continued be infringed and a detrimental future precedent will be set, showing foreign companies how to avoid U.S. law by having a foreign company like Parent Company raise capital from American investors infringing on a U.S. trademark name and trade dress, only to change the name and concoct a shell corporation like LegalOn after funding is secured, sued, and pretending that they are entirely separate entities.

### III.    Defendant Infringes on Plaintiff's Trademark

40. Plaintiff's LEGALFORCE trademark has established strength in the mark that is fanciful, suggestive, and impactful.   As a result of Plaintiff's exclusive, extensive, continuous and nationwide use of the LEGALFORCE marks, the marks have come to signify the leading provider of legal automation, business law, corporate law, and IP law services for businesses and consumers and have achieved such widespread public recognition and major press coverage from leading publications including Bloomberg, FastCompany, TechCrunch, The World Trademark Review, Wall Street Journal,  and in the ABA Journal.

41. LegalForce trademarks and activities and litigation of LegalForce is widely cited in the legal trade press, including numerous mentions and articles in Law360, Bloomberg Law, and the ABA Journal for nearly a decade.

42. Moreover, with over 100,000 clients over the past decade in nearly 80 countries around

the world, a substantial percentage of small business owners and the public recognize the LEGALFORCE brand.

43. As an industry leader, LegalForce has invested well over ten million dollars promoting the brand to corporate and business customers worldwide, and advertising and promoting the LEGALFORCE Marks.

44. In order to build and maintain its status as the leading nationally-recognized brand, LegalForce has promoted the LEGALFORCE Marks through advertising across the media of video, radio, and the Internet.

45. The LEGALFORCE Marks achieved recognition across the United States, and across many different industries and popular culture, for many years before Defendant's first infringing use. LegalForce owned websites that have become among the largest websites in the United States. LegalForce Trademarkia, for example, had website traffic approaching some of the largest websites on the Internet by 2017. LegalForce has attracted millions of page views and unique visitors to its LegalForce websites in the years prior.

46. Moreover, the LEGALFORCE marks have been protected globally by LegalForce. Specifically, in at least the following countries and regions around the world :

| SL # | MARK NAME | CLASS | COUNTRY | FILING DATE | APPLN # | CURRENT STATUS |
|---|---|---|---|---|---|---|
| 1 | LEGALFORCE (word) | 45 | USA | Nov. 30, 2011 | 85483252 | Registered |
| 2 | LEGALFORCE (logo) | 45 | USA | Nov. 21, 2012 | 85785842 | Registered |
| 3 | EGALFORCE TRADEMARKIA - WORD | 042 & 045 | USA | May.16, 2018 | 87924397 | Registered |
| 5 | LEGALFORCE (word) | 45 | India | Mar. 07, 2012 | 2295736 | Registered |
| 6 | LEGALFORCE (word) | 035, 042 & 045 | EU | Mar. 07, 2019 | 18033044 | Registered |
| 7 | LEGALFORCE (logo) | 035 & 045 | EU | May. 18, 2012 | 10894772 | Registered |
| 10 | LEGALFORCE (logo) | 035 & 045 | UK cloned | May. 18, 2012 | UK00910894772 | Registered |
| 11 | LEGALFORCE (word) | 035, 042 & 045 | UK cloned | Mar. 07, 2019 | UK00918033044 | Registered |
| 12 | LEGALFORCE (word) | 45 | Canada | March. 09, 2012 | 1567942 | Registered |
| 13 | LF LEGALFORCE | 45 | Australia | Feb. 06, 2019 | 1604629 | Registered |
| 15 | LEGALFORCE RAPC (word) | 035, 042 & 045 | New Zealand | Feb. 14, 2019 | 1113664 | Registered |
| 16 | LEGALFORCE (logo) | 035, 042 & 045 | New Zealand | Feb. 14, 2019 | 1113666 | Registered |
| 17 | LEGALFORCE (word) | 035, 042 & 045 | Australia | Oct. 30, 2018 | 1965611 | Registered |
| 19 | LEGALFORCE (word) | 035 & 042 | India | Feb. 07, 2019 | 4080128 | Registered |

SECOND AMENDED COMPLAINT
CASE NO.: 3:22-cv-07627-TLT

47. Similarly, the LEGALFORCE marks are embodied in domain names protected by LegalForec globally including in the countries/domains below.

| SL # | DOMAIN NAME | STATUS |
|---|---|---|
| 1 | legalforce.com | Registered |
| 2 | legalforcelaw.co.uk | Registered |
| 3 | legalforcelaw.com | Registered |
| 4 | legalforce.jp | Registered |
| 5 | legalforce.biz | Registered |
| 6 | legalforce.us | Registered |
| 7 | legalforce.de | Registered |
| 8 | legalforce.es | Registered |
| 9 | legalforce.fr | Registered |
| 10 | legalforce.info | Registered |
| 11 | legalforce.mobi | Registered |
| 12 | legalforce.eu | Registered |
| 13 | legalforce.ca | Registered |
| 14 | legalforce.it | Registered |
| 15 | legalforce.co | Registered |
| 16 | legalforce.tw | Registered |
| 17 | legalforce.net | Registered |
| 18 | legalforce.co.uk | Registered |
| 19 | legalforce.cn | Registered |
| 20 | legalforce.nz | Registered |
| 21 | legalforce.in | Registered |
| 22 | legalforcelaw.com | Registered |
| 23 | legalforcefh.com | Registered |
| 24 | legalforcetrademarkia.com | Registered |

48. The LEGALFORCE Marks are of material importance to LegalForce.  LegalForce has used the LEGALFORCE Marks continuously for nearly a decade and has spent large amounts of money promoting those marks.

49. Because of the invaluable goodwill that the LEGALFORCE Marks represent, and its importance to the company, LegalForce aggressively protects the LEGALFORCE Marks.

**A.  Direct Use of LegalForce Trademark by Defendant**

50. After Parent Company used the LegalForce mark in Japan, it began selling the LegalForce and LegalForce Cabinet products in the United States. Parent Company at first did this on its own, but it then incorporated Defendant on September 19, 2022, and began conducting business through Defendant thereafter.

51. Only in November 2022, after advertising the LegalForce and LegalForce Cabinet products for multiple months, did Defendant and Parent Company change the name of the company. In a Press Release dated November 14, 2022, Parent Company announced its name change to LegalOn it writes "The name of the AI contract screening platform "LegalForce" and the AI contract management system "LegalForce Cabinet" will not change and will continue to be provided as before." Thus, for at least several months after its incorporation, Defendant marketed in commerce products bearing and used the LegalForce mark.

**B.** **Infringement Subsequent to Name Change**

**a.** **Similarity of LegalForce and LegalOn Trademarks**

52. Even after changing its name to LegalOn, Defendant infringes on Plaintiff's trademark. The following factors apply when Defendant's use of the source identifier LEGALON is used when compared to the Plaintiff's senior rights in the LEGALFORCE marks.

53. First, the trademarks are substantially similar. They resemble one another in appearance, meaning, commercial impression, and secondary meaning. When compared side-by-side, it is apparent that Defendant's use of the LEGALON mark is confusingly similar to the Plaintiff's superior rights in LEGALFORCE. Six out of the seven characters of LegalOn are in the Plaintiff's registered trademarks for LegalForce. Both LEGALFORCE and LEGALON start with the word "Legal." Further, the words "On" and "Force" are capitalized in the same way as second words when used in conjunction with "Legal." Therefore the visual

impression of Defendant's "LegalOn" is confusingly similar to Plaintiff's incontestable rights in "LegalForce."

54. Defendant is the exclusive licensee of the  submitted by the Parent Company in the United States to the USPTO (Serial No. 97799217), upon information and belief. The same Parent Company had a U.S. trademark filed before the USPTO with the LF LegalForce design mark for LegalForce in U.S. trademark filing # 79347079 on Dec. 20, 2021. In addition to using the exact same company name, Parent Company's logo mark in the '079 Application clearly borrows from the logo of Plaintiff, while the Defendant's infringing design is a derivative work on the Parent Company's legalforce design mark filed with the USPTO. Both the Plaintiff's and the Parent Company's LF LegalForce design marks have literal L and F characters which are encapsulated within a polygon shape. The Defendant's mark has the same hexagonal form as Parent Company's LF LegalForce design mark, but with the derivative design spinning the arrows around instead of forming the L and F literal characters. See comparisons below:

| | |
|---|---|
| **Plaintiff's Mark** <br> **(Reg: 4346898  June 4, 2013)** |  |
| **Parent Company's  design filed with the USPTO** <br> **(see '079 App "LF" of August 11, 2022)** |  |
| **Defendant's derivative and infringing design** |  |

55. Defendant's logo mark which accompanies the LEGALON demonstrates intentional bad faith by using the same al shape as the original LEGALFORCE mark that Defendant's parent company used in Japan, filed to protect in the United States, and whose 3000 customers were incorporated into the Defendant's website.

56. Therefore, a reasonable jury could easily conclude that Defendant's "LegalOn" is confusingly similar to Plaintiff's incontestable rights in "LegalForce," especially in view of the prior history of the names and companies and the legal meaning and inference of the terms.

57. Moreover, the words "force" and "on" are related in that they both have to do with exerting power or influence. Force is the physical power to do something, while on is the state of being active or operating. When we say that someone is "forcing" something, we mean that they are using their power to make it happen. When we say that something is "on," we mean that it is active or operating.

58. In a legal context, the words "on" and "force" can be similar in the sense that they are both frequently used when discussing laws, regulations, and legal actions. When used in a legal context, the words "on" and "force" are similar in that they can both be used to describe the exertion of power or strength. For example, one might say that a strong wind "forced" the door open, or that you "turned on" the faucet to let the water flow. In both cases, the word "on" is used to indicate that something is being activated or energized.

59. In another example, a court might order someone to "turn on" their computer so that it can be searched, or a police officer might "force" someone to open their door during a search. In both cases, the words "on" and "force" are used to indicate that someone is being compelled to do something against their will.

60. Therefore, both words "on" and "force" are similar when used in a legal context in that they can both be used to describe the exertion of power or strength. When used in the context of legal software, the words "on" and "force" can have some similarities in terms of their application and functionality.

61. In legal software, the word "on" often indicates the status or activation of a feature or function. For example, you may turn "on" or activate certain features like document tracking, version control, or electronic signatures in legal software. It signifies that a particular function or capability is operational or enabled within the software system.

62. Similarly, the term "force" in legal software often relates to the effect or implementation of actions within the software. It can refer to initiating or executing specific actions with impact or effectiveness. For example, you might use the term "force" when applying changes to a document, pushing updates to multiple users, or enforcing compliance rules in the software system.

63. In both cases, "on" and "force" are used to describe the status or execution of features or actions within the legal software. They indicate that a function is active or that an action is being carried out with a certain level of effectiveness or impact.

64. The words "on" and "force" are often used together in legal context to describe the legal requirements for a particular action. For example, a contract might state that "the buyer is on the hook for all costs associated with the sale" or that "the seller is required to use all reasonable force to protect the property." In these cases, the word "on" indicates that the party has a legal obligation to do something, while the word "force" indicates that the party must take action with some degree of intensity or urgency.

65. In other cases, the words "on" and "force" can be used to describe the legal

consequences of a particular action. For example, a law might state that "anyone who commits a crime on another person will have to go on trial and will be forced to a mandatory prison sentence." In this case, the word "on" indicates that the person is legally responsible for their actions, while the word "force" indicates that the punishment will be severe.

66. Ultimately, the meaning of the words "on" and "force" in a legal software context are confusingly similar because both words can be used to describe the legal requirements, obligations, and consequences of a particular action.

67. Here are some examples of how the words "force" and "on" can be used similarly to describe the legal requirements, obligations, and consequences of a particular action:

    a.  The police used force to break up the protest.

    b.  The teacher turned on the lights in the classroom.

    c.  The engine was on, but the car wouldn't start.

    d.  The pressure cooker was on high heat, and the steam was starting to build up.

    e.  The politician forced her way through the crowd of reporters.

68. In each of these examples, the word "force" is used to describe the use of power or influence. The word "on" is used to describe the state of being active or operating.  The words "force" and "on" can also be used together in more figurative ways. For example, we might say that someone is "forcing their will" on someone else, or that they are "turning on the charm." In these cases, the words are not being used literally to describe physical force or power. Instead, they are being used to describe the use of influence or persuasion.

69. In addition, in many idiomatic expressions, the word "on" can be used to convey a sense of coercion, pressure, or influence, which is confusingly similar to the term "force" in a contextual sense. For example:

a. "Put pressure on": This phrase can imply exerting force, influence, or insistence on someone to achieve a desired outcome. It can be used in situations where someone is being pushed or persuaded to take a particular action.

b. "Impose on": This expression suggests enforcing or requiring someone to comply with something, often against their will or preferences. It can imply a sense of force or obligation being placed on someone.

c. "legal force on": Analogous to  "Put pressure on", the legal force on phrase can imply exerting legal force, influence, or insistence on someone to achieve a desired outcome through a legal means. It can be used in situations where someone is being pushed or persuaded to take a particular action through the operation of law.

70. Here are some examples of how the phrase "legal force on" can be used in a sentence:

a. The new legislation will have **legal force on** January 1st, 2024.

b. The court ruling had a significant **legal force on** future cases involving similar circumstances.

c. The contract imposes **legal force on** both parties, ensuring compliance with the agreed-upon terms.

d. The international treaty carries **legal force on** member countries, requiring them to abide by its provisions.

e. The Supreme Court decision established a precedent that holds **legal force on** lower courts.

f. The government implemented new regulations that will have **legal force on** the entire industry.

g. The constitutional amendment has been ratified and now has **legal force on** all citizens.

h. The judge's decision carries considerable **legal force on** the outcome of the trial.

i. The executive order will have immediate **legal force on** government agencies, mandating their compliance.

71. Lastly the phrase "force on" can be used together to describe imposing something on someone or something against their will. This has a likelihood to create a negative impression of the term LegalForce. For example, when these two words are used together it can lead a reasonable consumer to think that there is an association between LegalForce and LegalOn and the company  is "forcing its will on the people" by through operation of law.  A reasonable consumer may think that Legalforce  through LegalOn is "forcing their opinions on you" as if the businesses are related and trying to make consumers believe something that they don't want to believe.

a. The hurricane exerted immense **force on** the coastal towns, causing widespread destruction.

b. The boxer unleashed a powerful punch, delivering a tremendous **force on** his opponent's jaw.

c. The gravitational pull of the moon exerts a significant **force on** the tides.

d. The terms and conditions of the contract are in **force on** both parties.

e. The strong winds exerted **force on** the sails, propelling the sailboat forward.

f. He applied **force on** the door to open it.

g. The police officer used **force on** the suspect to restrain them.

72. In summary, in legal and contractual obligations: In legal or contractual contexts, "force

on" can refer to the requirement or obligation imposed by a law, regulation, or agreement.    In addition, in the context of user interfaces or software, "force on" can refer to a feature or setting that needs to be enabled or activated by the user. For instance, you may encounter options like "force on dark mode" or "force on two-factor authentication."

73. Similarly, even the words "on force" are used together in legal contexts.  Here are some examples of how the phrase "on force" can be used in a sentence in the legal and context:

    a.  The police officer relied **on force** to apprehend the suspect.

    b.  The military had to rely **on force** to maintain control in the war zone.

    c.  Negotiations failed, and the parties resorted to relying **on force** to settle the dispute.

    d.  The army relied heavily **on force** to secure victory in the battle.

    e.  The self-defense instructor emphasized the importance of relying **on force** only when absolutely necessary.

74. Second, there is great proximity to the goods/services that Plaintiff and Defendants sell, as both companies offer artificial intelligence powered legal services and have products and service offerings in direct competition.    While Plaintiff is a law firm whose lawyers provide final legal advice,   and increasingly does so with the benefit of technology, including AI, Defendant provides legal advice through solely artificial intelligence.  Both the Plaintiff and Defendant engage in direct sales, online marketing, web marketing, and event participation.

75. Both Plaintiff and Defendant provide legal services that are similar in nature. And, importantly, as both Plaintiff and Parent Company target the same customer base or use similar marketing channels, there is a high likelihood of confusion.  In addition, given the conditions under which the companies do business and the buyers to whom sales are made, since both

companies sell their legal services in similar ways (i.e., both target consumers who make careful purchases), there is an increased likelihood of confusion. Parent Company's mark so resembles Plaintiff's marks as to be likely, when used in connection with Parent Company's goods and services, to cause confusion, to cause mistake, and to deceive the trade and public, who are likely to believe that Parent Company's goods and services have their origin with the Plaintiff and/or that such goods and services are approved, endorsed, or sponsored by the Plaintiff or associated in some way with the Plaintiff.  There is also objective third-party evidence demonstrating that Plaintiff's services and Parent Company of Defendant's services are frequently intertwined. A representative sample of this evidence is attached in Exhibits 1-6. Because the respective goods and services are highly related to each other, Defendant's use of the LegalOn mark and Parent Company's LegalForce mark are extremely likely to cause confusion.

76. Third, Defendant's actions show an intentional desire to mimic a derivative work of the Plaintiff's design mark in LEGALFORCE, in a manner that makes it clear that the Defendant is intentionally trying to create a likelihood of confusion.   For example, the Defendant's website incorporates customers of the Parent Company as its own, but most of those customers were acquired when the parent company was called LEGALFORCE.   Defendant writes on its website "Innovative lawyers and legal professionals at over 3,000 leading companies and firms globally use LegalOn to review and negotiate contracts faster and more accurately."   In reality, these are customers of the Parent Company while it was called LEGALFORCE.

77. Fourth, there is likelihood of market expansion because brands LEGALFORCE and LEGALON are expanding into overlapping markets of artificial intelligence powered legal automation. This expansion of both entities, which is currently underway, has a likelihood of

creating new competition and resulting in consumer confusion. This is especially true in light of the fact that, as discussed above, Defendant incorporates Parent Company's corporate history - and its use of the LegalForce name - into its own story.

**C. Defendant and Parent Company's Infringement Harmed Plaintiff's Fundraising**

78. Parent Company used and continues to desire to use the LEGALFORCE trademark in the United States, and has failed to expressly abandon a LF LegalForce Logo mark in the United States.[25] Defendant and Parent Company's use of this mark have harmed Plaintiff by diverting funding that otherwise would have gone to Plaintiff.

79. When Parent Company first requested its U.S. rights on December 19, 2021 through a WIPO trademark application designating the United States[26]; Parent Company was running out of venture funding needed to sustain its operations and was desperately seeking additional investment.[27] That day, Parent Company filed a U.S. trademark for LegalForce's LF mark serial 79347079. For the entire ensuing period between December 2021 and June 2022; Parent Company represented to investors that it needed additional funding to continue the expansion of its LEGALFORCE American product launched July 1, 2020 to global customers for use with American contracts in California and New York.[28] It represented to these investors that it wanted to further expand into the United States and represented to these investors its products

---

[25] Parent Company also made a representation under penalty of perjury to the United States government that it had a bona fide intent to use the LF LegalForce mark in the United States to the USPTO through its U.S. trademark filing # 79347079 on August 11, 2022.
[26] WIPO mark filed on December 19, 2021 as WIPO Serial 1677142 designating the United States.
[27] Nozumu Tsonoda made these admissions to the trade press in Japan.
[28] See Linkedin Post as of July 13, 2022 by Parent Company titled "Lawyer" with the description "Since July 1, 2020, our product "LegalForce" hs released the first official version of English review function in Japan." Nozuma Tsunoda admitted that "English" refers to "American" contracts, and not contracts of the United Kingdom or elsewhere. Tsunoda and Biard also admitted that the product names continue to be called LegalForce and LegalForce Cabinet after December 1, 2022.

were called LegalForce, LegalForce Cabinet, and that it intended to continue using the name LEGALFORCE in conjunction with their U.S. product.    Many of these investors actually invested in Parent Company for the specific use of funds now by LegalOn.

80. In fact, Parent Company also made a representation under penalty of perjury to the United States government that it had a bona fide intent to use the LF LegalForce mark in the United States to the USPTO through its U.S. trademark filing # 79347079 on August 11, 2022; a mark was pending until it was canceled on February 23, 2023.  Moreover, Parent Company has publicly admitted that it raised the $130 million dollars while it was called LegalForce for the financing was for "expansion into the U.S." in its Japanese retaliation Complaint filed on January 20, 2023 against the LegalForce.[29]   At all times while raising the $130 million dollars between 2018 and June 2022, Parent Company used the name LegalForce, handing out business cards to investors who actually invested in Parent Company for products with the name LegalForce.   Many of these investors are American venture capitalists with financing arms for Japanese companies in Japan including World Innovation Labs, Goldman Sachs, and Sequoia Capital.    Parent Company shared its name LegalForce with the American trade press, and recruited employees in the United States with the name LegalForce including the LegalOn CEO Lewis in August 2023.

81. Based on Parent Company's August 11, 2022 trademark filing in the United States for LF LEGALFORCE logo mark which is Live and Pending (not abandoned)[30], and given that

---

[29] "The Defendant filed this lawsuit in the U.S. on June 24, 2022, the day after the Plaintiff issued a press release regarding **financing for expansion into the U.S.**" Japanese Complaint, LegalOn v. LegalForce RAPC Worldwide filed in Japan on January 20, 2023 page 19, first para.
[30] See TSDR Record, LF LegalForce Logo mark U.S. Serial 79347079 filed August 11, 2022 owned by, owned by LegalOn Technologies, Inc., 6th floor, Toyosu Front, 3-2-20, Toyosu, Koto-ku Tokyo 135-0061 Japan;
https://tsdr.uspto.gov/#caseNumber=79347079&caseType=SERIAL_NO&searchType=statusSearch and claiming priority of WIPO mark filed on December 19, 2021 as WIPO Serial 1677142

Parent Company is the same owner of the LEGALON trademark used by LegalOn[31] which was also Live and Pending (not abandoned), LegalOn had imminent plans on continuing to leverage the goodwill and source identification of LegalForce mark in the United States beyond the 3000 customers it has already claimed as its own who use LegalForce Cabinet and LegalForce products of Parent Company.   Moreover, given the hiring of Paul and Spencer Drobot from a major competitor to LegalForce, UpCounsel, LegalOn has imminent plans to directly compete with LegalForce inside of the United States.  Paul and Spencer Drobot previously worked at UpCounsel, a company that is a direct competitor of Plaintiff in California, and who was sued by Plaintiff resulting in a substantial settlement in which Plaintiff's shareholders received substantial shares in UpCounsel in 2019.

82. In fact, LegalOn has only the intention of continuing its expansion in the United States, and has no imminent plans for global expansion in other countries besides the United States.[32] At all times, Parent Company represented to investors that its sole intention was to expand in the United States, and that its need for venture capital was for that purpose " because the US leads the world in the contract market." [33]   While raising the venture funding of $130 million

---

designating the United States.

[31]  See TSDR Record, LEGAL ON trademark U.S. Serial 97564038 filed August 25, 2022 owned by, owned by LegalOn Technologies, Inc., 6th floor, Toyosu Front, 3-2-20, Toyosu, Koto-ku Tokyo 135-0061 Japan; https://tsdr.uspto.gov/#caseNumber=97564038&caseType=SERIAL_NO&searchType=statusSearch and TSDR Record, LEGAL ON TECHNOLOGIES trademark U.S. Serial 97560797 filed August 23, 2022 owned by, owned by LegalOn Technologies, Inc., 6th floor, Toyosu Front, 3-2-20, Toyosu, Koto-ku Tokyo 135-0061 Japan; https://tsdr.uspto.gov/#caseNumber=97560797&caseType=SERIAL_NO&searchType=statusSearch , both predating the formation of LegalOn by about three weeks.

[32]  Admitted during Deposition of JP Biard, January 25, 2023 in the U.S. Embassy in Tokyo authorized under the Hague Convention and the Ministry of Justice of Japan.

[33]  Admitted during the Deposition of Nozumu Tsunoda, January 26, 2023 in the U.S. Embassy in Tokyo authorized under the Hague Convention and the Ministry of Justice of Japan.

dollars, Parent Company represented to investors that it would be called LegalForce.[34]   In fact,

its pitch decks, presentations, business cards all reflected the name LegalForce.[35]   Parent

Company filed both an international trademark designating only the U.S. as an intent to use

filing on December 19, 2021, and then later perfected that right in the United States by filing a

U.S. trademark application on August 11, 2022.[36]   In fact, Parent Company's CEO spoke with

the Japanese trade press about how low its funding was and how desperate it was to raise VC

money after its fundraise, when explaining the need for its capital at just the right moment.[37]

83. Only after raising venture capital of $130 million, and only after the initial lawsuit filed

against Parent Company by LegalForce in June 2022 did Parent Company conceive of,

determine, and choose the name LegalOn in August 2022.[38]   Later the next month, in an

attempt to further escape liability, Parent Company incorporated its shell U.S. corporation

LegalOn, the Defendant described herein. Continuously throughout this period, and at least

since February 13, 2019, Parent Company's CEO Nozumu Tsunoda has known about Plaintiff's

superior rights because of the Plaintiff's opposition of the LegalForce trademark in Japan.[39]

84. Daniel Lewis, the CEO of LegalOn, has known of the Plaintiff's trademark rights in the

LEGALFORCE marks since at least 2014, and has visited the offices of the Plaintiff

LegalForce.   Lewis's previous company RavelLaw funded a major scanning project at the

---

[34] *Id.*

[35] *Id.*

[36] See TSDR Record, LF LegalForce Logo mark U.S. Serial 79347079 filed August 11, 2022 owned by, owned by LegalOn Technologies, Inc., 6th floor, Toyosu Front, 3-2-20, Toyosu, Koto-ku Tokyo 135-0061 Japan; https://tsdr.uspto.gov/#caseNumber=79347079&caseType=SERIAL_NO&searchType=statusSearch and claiming priority of WIPO mark filed on December 19, 2021 as WIPO Serial 1677142 designating the United States.

[37] Nozumu Tsunoda made these admissions to the trade press in Japan.

[38] Admitted during the Deposition of Nozumu Tsunoda, January 26, 2023 in the U.S. Embassy in Tokyo authorized under the Hague Convention and the Ministry of Justice of Japan.

[39] *Id.*

Harvard Law School library known as "Free the Law" in 2014.  During that time, Lewis was part of a team that invited LegalForce CEO to speak at the Harvard Law School.[40]  Abhyanker spoke at Harvard about LegalForce, under a banner of Lewis's former company RavelLaw as a speaker invited by Lewis in March 2014.[41]  This video is posted publicly on YouTube.[42]  Immediately below Abhyanker's podium was the sign of RavelLaw, a computer-assisted legal research startup that Lewis previously started.



**LegalForce CEO Raj Abhyanker speaking at Harvard Law School**

**on invitation of Lewis's company Ravel Law in 2014.**[43]

85. Despite knowing of LegalForce's rights, Lewis chose to join LegalOn, a company that Lewis knew was in a major lawsuit with LegalForce, and which Lewis knew was previously

---

[40]Raj wrote to Daniel "It was nice meeting all of you at the Harvard conference this week. Thank you for inviting me!   Renato, thank you for recording my talk.   I posted my talk this week at the Harvard Law School Conference on Disruptive Innovation in the Market for Legal Services on Youtube.   My talk was titled : "Trademarkia: Disrupting LegalZoom & Big Law @ the Harvard Law School" (YouTube Video) http://youtu.be/QlTygvWI6Hs Stay in touch and let me know if I can be of assistance to you in the future. Kind regards,  Raj
[41]*Id.*
[42]*Id.*
[43]*Id.*

called LegalForce, and whose own products continue to be called LegalForce and LegalForce Cabinet.[44]

**IV. Unlicensed Practice of Law**

86. LegalOn's artificial intelligence product in the United States engages in the unauthorized practice of law ("UPL") under the current definition of UPL statute in California because (1) LegalOn is not organized as a law firm (2) does not employ any lawyers who represent external clients and yet (3) its artificial intelligence software advises non-attorneys on the legal risks associated with critical issues in specific contracts in-force, and provides guidance and language to fix and negotiate legal risks.

87. This is not a mere hypothetical. Mr. Lewis admitted at the deposition on June 21, 2023 that LegalOn's software is used by non-attorney employees at corporations in California. Particularly, Mr. Lewis testified that he interviewed Alenda Martin, a Senior Contract Manager at Turo (headquartered in San Francisco), and that Mr. Lewis admitted that he knew that Ms. Martin does not hold a law degree and is not a licensed lawyer. Mr. Lewis testified that LegalOn issued a press release on April 23, 2023 in which Ms. Martin of Turo is quoted as saying "I use LegalOn consistently" and that the LegalOn artificial intelligence "picks up critical issues quickly and accurately. The guidance and sample language are helpful to fix and negotiate those risks. And now, AI Revise feels like a major advance – it's really exciting to see."

88. Despite this, Mr. Lewis admitted that he interviewed Ms. Martin at the Corporate Legal Operations Consortium (CLOC) on May 17, 2023 in Las Vegas because she is a user of

---

[44]LegalForce was a featured and invited speaker at the law school by a team which included Lewis. In the talk, Abhyanker discussed LegalForce, and specifically LegalForce Trademarkia's new adoption of the LegalForce name as it sought global expansion. After the event, on March 8, 2014, Raj Abhyanker shared with Lewis his talk at the Harvard Law School posted on YouTube.

SECOND AMENDED COMPLAINT
CASE NO.: 3:22-cv-07627-TLT

LegalOn's product.    Therefore, LegalOn's artificial intelligence software engages in the unauthorized practice of law in California.

89. Lewis also admitted at his deposition that the statements on the U.S. entity's website of "LegalOn is the leader in AI contract review software for legal teams," "Innovative lawyers and legal professionals at over 3,000 leading companies and firms globally use LegalOn to review and negotiate contracts faster and more accurately," and "Founded in 2017 by two corporate lawyers, the company is backed by leading investors and has raised over $130M (JPY17.9Bn)," are not associated with LegalOn in the United States, but rather are attributable to the Japanese parent entity.    Mr. Lewis acknowledged that there is no reference to the Japanese entity made in the areas where the above public representations are made.    Therefore, these statements are literally false.

### **FIRST CLAIM FOR RELIEF**

### TRADEMARK INFRINGEMENT

### 15 U.S.C. § 1114

90. LegalForce repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth herein.

91. Plaintiff's marks LegalForce and LEGALFORCE are valid, protectable trademarks that are registered on the principal register at the USPTO.

92. LegalForce is the sole and exclusive owner of the LEGALFORCE Marks. It has overseen, controlled, and directed goods and services marketed, advertised, promoted, and sold under the LEGALFORCE Marks.

93. Between 2020 and 2022, Parent Company, an alter ego of Defendant, used the LegalForce mark to raise funds and drum up business in the United States, which funds and

which business were later transferred to Defendant.

94. After Defendant's incorporation in September 2022, until the product names were changed in November of 2022, Defendant used the LegalForce mark on products and/or services that it sold in the United States.

95. On December 1, 2022, LegalOn began using the LEGALON mark in the United States.

96. Until then, Defendant used the Parent Company's infringing LegalForce mark.

97. Defendant's use of LEGALON is in a manner that is likely to cause confusion and/or mistake among internet users as to the source or sponsorship of Plaintiff's services constitute trademark infringement.

98. LegalForce has priority of use in commerce for the LEGALFORCE Marks over LegalOn.

99. LegalOn's infringing use as alleged herein was done without the authorization or consent of LegalForce.

100.    Such use is likely to cause initial interest confusion of consumers who are in fact searching solely for LegalForce and/or LegalForce's registered trademarks  and is highly likely to cause confusion, mistake and deception among the general public as to the origin of LegalOn's goods and services and/or as to the sponsorship by, affiliation with, and/or connection to LegalForce.

101.    By using a confusingly similar mark to LegalForce's registered trademarks, and by selling, offering for sale, distributing, or advertising goods and services using the LEGALON to the general public in connection with LegalForce's registered trademarks, for profit, LegalOn has caused and, unless enjoined by this Court, will continue to cause likelihood of confusion and deception of members of the public, and additional injury to LegalForce's exclusive right to

control, and benefit from, its registered trademarks, as well as LegalForce's goodwill and reputation as symbolized by the LEGALFORCE Marks.

102.   Recognizing the difficulty in supporting the heightened standard for fame in federal courts, LegalForce is not seeking remedies as a famous mark at this time from Defendant under a dilution theory, it is only seeking standard compensatory damages under a trademark infringement theory for non-famous marks.

**SECOND CLAIM FOR RELIEF**

TRADEMARK INFRINGEMENT

15 U.S.C. § 1125(a)

103.   LegalForce repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth herein.

104.   Defendant use of the LEGALON mark is likely to cause confusion, mistake, and/or deception among consumers as to the affiliation, connection, or association of LegalOn with LegalForce, or as to the origin, sponsorship, or approval of LegalOn's products and services by LegalForce.

105.   LegalOn's adoption and use of the LEGALON Marks has been made notwithstanding LegalForce's well-known rights in the famous LEGALFORCE Marks and with both actual and constructive notice of LegalForce's federal registration rights under 15 U.S.C. § 1072.

106.   The Lanham Act prohibits any false or misleading description or representation, including words or other symbols tending falsely to describe or represent the same, made in connection with any goods or services entered into commerce.

107.   Displaying LEGALON on LegalOn' homepage is likely to cause confusion or

mistake, or to deceive as to the affiliation, connection or association of the Infringing Websites with LegalForce, or as to the origin, sponsorship, or approval by LegalForce.

108.    Further, Defendant's prior use of the LegalForce trademark through its Parent Company is intended to create confusion and allow Defendant to benefit from the brand that Plaintiff has built.

**THIRD CLAIM FOR RELIEF**

TRADEMARK INFRINGEMENT

CALIFORNIA COMMON LAW

109.    LegalForce repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth herein.

110.    LegalForce is the sole and exclusive owner of the trademark rights in the LEGALFORCE Marks.

111.    LegalForce is the sole and exclusive owner of the trademark dress rights in the Orange color with respect to legal services.

112.    LegalForce has been using this mark and this trade dress for more than a decade, and has priority of use in commerce for the LEGALFORCE Marks over LegalOn.

113.    By its acts as described above, Defendant has created a likelihood of confusion, mistake, and/or deception among consumers as to affiliation; connection, or association with LegalForce or as to the origin, sponsorship, or approval of Defendant's LEGALON products and services by LegalForce and its trade dress.

114.    Absent injunctive relief, LegalForce has no means by which to control Defendant's infringing activities. LegalForce is thus entitled to preliminary and permanent injunctive relief prohibiting Defendant from continuing to commit such acts.

**FOURTH CLAIM FOR RELIEF**

CALIFORNIA UNFAIR COMPETITION LAW

CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*

115.     LegalForce repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth herein.

116.     California's Unfair Competition Law, Cal. Bus. and Prof. Code § 17200, *et seq*. ("the UCL"), prohibits any unlawful, unfair, or fraudulent business practice. Defendant's conduct, which deprives Plaintiff of the value it has built in its trademark, both as to customers and venture capital firms or other funding sources, violates the UCL.

117.     Defendant's conduct, as detailed above, violates the 15 U.S.C. §§ 1114 and 1125(a), as well as California common law, and therefore constitutes unlawful conduct under § 17200.

118.     Defendant's conduct is also "unfair" pursuant to § 17200 irrespective of the violation of any other law. This conduct is immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious to Plaintiff. Defendant has, among other things, as a sister company to Parent Company, intentionally interfered with Plaintiff's prospective economic advantage with investors in Silicon Valley, as Plaintiff was seeking venture capital from similar funds.

119.     Plaintiff was directly and proximately harmed by Defendant's conduct because, as a direct and foreseeable result of said conduct, Plaintiff lost investments by venture capital firms and experienced a dilution of its brand.

120.     LegalForce also has standing to sue in Unfair Competition Law ("UCL") because

Defendant engages in the unauthorized practice of law.

121.    LegalOn violated the unfair prong of UCL because at least because of the following reasons:

    a.  The unauthorized practice of law is a serious crime under laws of California, which is punishable by up to one year in a county jail under Cal. Bus. & Prof. Code § 6126.

    b.  California courts have defined the practice of law to include, among other things:

        i.  Providing legal advice and counsel.

        ii.  Preparing legal instruments and contracts that secure legal rights.

    c.  It is unfair if LegalOn is able to offer artificial intelligence generated legal advice and counsel through software and opine on legal instruments and contracts that secure legal rights through legal advice disseminated through artificial intelligence in lieu of human licensed California lawyers under the current definition of California ethics rules on the practice of law.

    d.  It is unfair if LegalOn is able to offer these unauthorized practices of California law services, while LegalForce abides by the laws but its vested interest is taken away unfairly by LegalOn.

    e.  The consumer injury caused by LegalOn in California violating California bar ethics rules is substantial. Consumers become susceptible to the risk of bad legal advice dispensed by unlicensed, un-trained, and uninformed artificial intelligence based software.

    f.  Consumers and businesses in California themselves cannot reasonably have avoided the injury because a reasonable consumer is not familiar with what

constitutes the practice of law under the current definitions of Cal. Bus. & Prof. Code § 6126.

g. Consumers and businesses in California themselves cannot reasonably have avoided the injury because a reasonable consumer is not familiar with what constitutes the practice of law under the current definitions of Registered In-House counsel, and Lewis, Shimoto, and/or Longhurst have failed to register as in-house counsel as required by California State Bar rule 9.46(h).

h. Consumers and businesses in California themselves cannot reasonably have avoided the injury because they cannot tell which of LegalOn's false statements with respect to its technology is credible.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment against LegalOn as follows:

A. That LegalOn and its respective agents, officers, employees, representatives, licensees, franchisees, successors, assigns, attorneys and all other entities and persons acting for, with, by through or under authority from Defendant, and each of them, be preliminarily and permanently enjoined from: (a) using the LEGALON Marks, service marks, and trade names, or any colorable imitation thereof; (b) using any trademark that imitates or is confusingly similar to or in any other way similar to any of the LEGALFORCE Marks or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of LegalForce' s products or its connectedness to Defendant; (c) using any trademark or service mark that is confusingly similar to the distinctiveness of any of the LEGALFORCE Marks;

B.  An order that LegalOn permanently abandon the registration of http:/www.legalontech.com Domain (and any other similar domains owned or acquired by LegalOn);

C.  That LegalOn be required to file with the Court and serve on LegalForce within thirty (30) days after entry of the injunction, a declaration under oath setting forth in detail the manner and form in which LegalOn has complied with the injunction;

D.  That, pursuant to 15 U.S.C. § 1117, LegalOn be held liable for all damages suffered by LegalForce resulting from the acts alleged herein including compensatory damages against LegalOn in an amount to be proven at trial;

E.  That, pursuant to California common law, LegalOn be held liable for tortious (intentional, reckless, or negligent) interference of Plaintiff's prospective economic advantage for all damages suffered by LegalForce resulting from the acts alleged herein including compensatory damages against LegalOn in an amount to be proven at trial;

F.  Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this Complaint;

G.  That the Court grant LegalForce any other remedy to which it may be entitled as provided for in 15 U.S.C. §§ 1116 and 1117 or under all applicable federal or state laws; and

H.  Order any other such relief as the Court deems appropriate.


Respectfully submitted this Thursday July 13, 2023.


                            LEGALFORCE RAPC WORLDWIDE P.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By   /s/ Raj V. Abhyanker
Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiff:
LegalForce RAPC Worldwide P.C.

1

## **<u>JURY TRIAL DEMAND</u>**

2

3
Plaintiff hereby requests a trial by jury on all issues so triable in this matter.

4

5
Respectfully submitted this Thursday July 13, 2023.

6
LEGALFORCE RAPC WORLDWIDE P.C.

7
By   /s/ Raj V. Abhyanker

8
Raj V. Abhyanker
California State Bar No. 233,284

9
Attorney for Plaintiff:
LegalForce RAPC Worldwide P.C.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28